IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TERRY DIMERY, individually, and on behalf of other similarly-situated individuals, | ) ) ) ) | Civil Action No.: 4:17-CV-00701-RBH |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| CONVERGYS CORPORATION, and CONVERGYS CUSTOMER MANAGEMENT GROUP, INC., jointly and severally as, | ) ) ) ) ) | |
| Defendants. | ) ) | |

On March 14, 2017, Plaintiffs Terry Dimery ("Plaintiff") and Cynthia Fuerte filed this Collective and Class Action Complaint, seeking recovery against former employer Convergys Corporation ("Convergys") and Convergys Customer Management Group, Inc. ("CCMG") (Collectively, "Defendants"). The Complaint asserts that Defendants engaged in willful violations of the Fair Labor Standards Act (the "FLSA") and breach of contract under common law [ECF #1, p. 1]. The Complaint requested relief in the form of damages associated with the breach of contract and violation of FLSA claims, as well as an order certifying this action as a collective action in accordance with 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure. [ECF #1, p. 23]. Currently before the Court are several motions, including Plaintiffs' Motion to Conditionally Certify Class based on a failure to pay overtime wages under § 216(b) of the FLSA [ECF #10];[1]; Defendants' Motion for Summary Judgment as to both Plaintiffs' FLSA

---

[1] This Motion for Conditional Certification does not reference a Rule 23 class.

collective action and Rule 23 class claims [ECF #35]; and Defendants' Motion to Strike Notice of Joinder. [ECF #42]. The Court will now consider these motions before it. In so doing, this Court has considering all briefing and arguments by the parties, as well as all evidence of record.

### Procedural History and Statement of Facts

Plaintiff Terry Dimery was employed by Defendants from November 16, 2015 until January 13, 2017. [ECF #35-1, p. 2]. Opt-in Plaintiff Charlotte Jones was employed from February 5, 2009 until April 21, 2017. [ECF #35-1, p. 2]. According to the facts as alleged in the Complaint, Plaintiffs were employed as hourly at-home customer service representatives by Defendants. [ECF #1, p. 2]. According to Plaintiffs, employees work from home, rather than at a central office location. [ECF #1, p. 6]. Plaintiffs allege that Defendants failed to pay them, and all similarly situated employees, for their pre-shift time spent booting up their computers, logging into required computer networks and software applications, and reviewing work-related e-mails and other information at the start of their shift. [ECF #1, p. 2]. Furthermore, Plaintiffs allege that Defendants failed to compensate them and other similarly situated employees for all mid-shift technical downtime incurred due to computer and other technical problems. [ECF #1, p. 2]. Plaintiffs further allege that Defendants failed to pay Plaintiffs and other similarly situated employees for post-shift time spent doing similar tasks. [ECF #1, p. 3]. Plaintiffs thus brought this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and "all current and former hourly at-home customer service representatives who worked for Convergys at any time from March __, 2014 through the date of judgment." [ECF #1, p. 15]. This is the purported definition of employees who they seek to join in the FLSA collective action. Plaintiffs also

brought this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves, and the same suggested defined group of employees for the class action. [ECF #1, p. 17]. After filing the Complaint, Plaintiffs filed a Motion for Conditional Class Certification and Notice on April 3, 2017. [ECF #10]. The motion seeks an order from this Court conditionally certifying the proposed collective FLSA class. [ECF #10-1, p. 29]. On April 27, 2017, Plaintiffs filed a Consent to Join, naming Charlotte Jones as an Opt-In Plaintiff. [ECF #23-1]. On May 30, 2017, Plaintiff Fuerte was dismissed from this case with prejudice. [ECF #27]. On May 31, 2017, Opt-In Plaintiff Charlotte Jones filed a declaration stating similar allegations against Defendants as those found in the Complaint. [ECF #29-1].

On July 14, 2017, Defendants filed a motion for summary judgment. [ECF #35]. Defendants' argument is premised on the fact that both Plaintiffs Dimery and Jones waived their ability to pursue a collective and class action against Defendants by signing their respective employment application agreements, which included language to that effect. Several days later on July 17, 2017, Defendants filed their response opposing class certification. [ECF #36]. Plaintiff filed a reply to this opposition on July 24, 2017 [ECF #37], as well as filing a response to Defendants' summary judgment motion on July 28, 2017. [ECF #38]. Defendants filed a reply in support of the requested summary judgment on August 4, 2017. [ECF #39]. On October 10, 2017, Plaintiff filed a Notice of Joinder seeking to include Lashea Moore as an opt-in Plaintiff. [ECF #41]. On October 13, 2017, Defendants filed a Motion to Strike requesting this notice of joinder be denied. [ECF #42]. Plaintiffs filed a response in opposition [ECF #43], and Defendants filed a reply [ECF #44]. These matters are now before the Court for review.

## **Discussion**

### I. Summary Judgment

     The first issue this Court will consider is whether it is appropriate to grant summary judgment to Defendants with respect to Plaintiffs' FLSA collective and Rule 23 class action claims. Defendants argue that Plaintiffs have waived their right to maintain either a collective or class action as a matter of law. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

     In this case, Defendants "bear[s] the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendants carry this burden, "the

burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). The nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

**A. Existence of a Valid, Binding Agreement**

Defendants first argue that, as a matter of law, Plaintiffs waived their right to pursue a collective or class action against Defendants, based upon the language in the employment application between Defendants and Plaintiffs which constitutes an enforceable contract. Defendants reference the fact that, within the Complaint, Plaintiffs rely upon the existence of a binding and valid contract for their purported claims. Defendants have attached to their Motion the Declaration of Pam Castillo, the Regional Human Resources Business Partner for Convergys.

5

[ECF #35-2, pp. 2-3]. Ms. Castillo attests to the fact that both Charlotte Jones and Terry Dimery were employed by Convergys. [ECF #35-2, pp. 2-3]. She further attests to the fact that Ms. Jones was offered a full-time position on August 30, 2016 and signed an employment application on August 31, 2016. [ECF #35-2]. This document, entitled "Reaffirmation of Application Acknowledgement," evidencing Ms. Jones's hire date, was signed on August 31, 2016 and is attached to Ms. Castillo's declaration. [ECF #35-2, Exhibit B]. Greg Preston, the Director of Application Development, also filed a declaration attesting to the fact that Terry Dimery electronically signed an employment application on November 7, 2015. [ECF #35, Exhibit 2]. Attached to Mr. Preston's declaration is the electronic employment agreement.[2] In response, Plaintiffs argue that this Court should deny the motion as premature because Plaintiffs have not had the opportunity to explore the timing and the validity of the purported agreements in the discovery process. [ECF #38, p. 10]. Discovery in this case ended January 3, 2018, and Plaintiffs have not supplemented the record with any additional evidence or documents.

In determining the existence of a contract, federal courts look to state law for guidance. In South Carolina, the elements of a contract include offer, acceptance and valuable consideration. *Wilson v. Willis*, 786 S.E.2d 571, 579, 416 S.C. 395 (S.C. Ct. App. 2016). South Carolina law has enacted the Uniform Electronic Transactions Act, which provides that a contract must not be denied legal effect or enforceability because it is an electronic record. S.C. Code Ann. § 26-6-70.

---

[2]Courts have previously held that an electronic signature of acknowledgment of the receipt of an employee handbook containing an arbitration provision constitutes valid acceptance of an [arbitration] agreement. *Jackson v. University of Phoenix, Inc.*, No. 5:13-cv-736-BO, 2014 WL 672852 (E.D.N.C. Feb. 20, 2014). Furthermore, where a defendant comes forward with evidence showing an employee electronically acknowledged receipt of an agreement, in that case an arbitration agreement, the plaintiff's denial that he signed an acknowledgment has failed to provide a valid basis to submit claims to arbitration. *See Jackson*, 2014 WL 672852, at *1.

Defendants argue that the electronic signatures of Plaintiff Jones and Plaintiff Dimery in the employment application agreement, which included a collective and class action waiver, are enforceable. Other courts have found that a similar waiver within an employment application may become binding on the parties. *Palmer v. Convergys Corp.*, No. 7:10-cv-145, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) (finding a waiver very similar to the one at issue to be enforceable); *see generally Convergys Corp. v. NLRB*, 866 F.3d 635 (5th Cir. 2017) (discussing the agreement that Convergys job applicants must sign which includes a class action waiver, and ultimately finding the waiver valid). Plaintiffs also rely upon the validity of an employment agreement in order to bring forth certain allegations in their Complaint. For example, the Complaint alleges, "Defendant had a binding and valid contract with Plaintiffs" and that Plaintiffs "accepted the terms of Defendants' contractual promises and performed under the contract." [ECF #1, pp. 21-22]. It does not appear Plaintiffs directly dispute the existence of a valid agreement. Instead, Plaintiffs argue that they need time to explore the timing and validity of the agreements Defendants have provided with their motion, and therefore argue that the motion is premature because discovery has not yet ended. [ECF #38, p. 10]. Plaintiffs point out that there are not any "actual signatures" on the applications; however, this Court notes that it does appear that at least as to Charlotte Jones, the application was electronically signed. As to Plaintiff Dimery, Mr. Preston testifies that Plaintiff Dimery "signed" the document with an electronic number unique to him. In South Carolina, an electronic signature satisfies a law requiring a contract or "record" be in writing. S.C. Code Ann. § 26-6-70. Plaintiffs do not otherwise argue that they did not sign an employment application or agreement.

Discovery ended on January 3, 2018. Defendants have met their initial burden of establishing the existence of a contract in that they have provided the affidavits of Convergys employees who have attested that these documents relate to the respective employees. Once Defendants provided the requisite evidentiary support to establish these agreements, it was incumbent upon Plaintiff to provide something beyond mere allegations to refute this fact. Plaintiffs have not filed anything in the record to suggest these documents contain false signatures, nor have Plaintiffs supplemented their response to the motion or requested additional time to supplement the record. Plaintiffs have not otherwise come forward with evidence, affidavit or otherwise, suggesting that Plaintiffs did not sign the agreements in question. While Plaintiffs make mention of the fact that they need additional time to investigate these documents, Plaintiffs have not filed an affidavit or otherwise provided any evidence to refute the testimony on Ms. Castillo and Mr. Preston regarding the timing and veracity of the execution of these documents. Therefore, this Court believes it is appropriate to consider the merits of the summary judgment motion at this stage.

## B. Waiver Language and Contractual Rights

Defendants argue that as a matter of law, an individual may waive his or her right to bring or join a class action lawsuit. Thus, Defendants contend that Plaintiff Dimery and Opt-In Plaintiff Jones waived their ability to pursue a collective and class action because they both signed an agreement expressly stating they would "pursue any lawsuit" relating to their employment with Defendant "as an individual, and will not lead, join, or serve as a member of a class or group of persons bringing such a lawsuit." [ECF #35-2, Ex. B]. In response, Plaintiffs first argue that

generally speaking, individuals cannot waive their private right of action under the FLSA. This argument is tethered to a related argument in which Plaintiffs argue the right to pursue a collective action is a substantive right, and that the clear intent of the FLSA, as well as public policy, precludes such a waiver.

The FLSA provides that an action to recover damages, "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). An employee must consent in writing to becoming a party plaintiff in any such action under the FLSA. 29 U.S.C. § 216(b). Defendants have provided the affidavit of Greg Preston who avers that Plaintiff Dimery electronically signed his employment application with a unique electronic signature ID on November 7, 2015. Defendants have attached Plaintiff Dimery's application for employment, which included the following language:

> I further agree that I will pursue any claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) as an individual, and will not lead, join, or serve as a member of a class or group of person bringing such a claim or lawsuit.

[ECF #35-3, pp. 3-4,p. 17]. Likewise Opt-In Plaintiff Charlotte Jones electronically signed an employment agreement containing almost identical language on August 31, 2016. [ECF #35-2, pp. 13-14].

Plaintiffs assert that the right to participate in a collective action under § 216(b) is a *substantive* right provided for by the FLSA that cannot normally be waived. Plaintiffs further argue that the right to bring a collective action under the FLSA may only be waived in very narrow circumstances: either through an approved settlement or within the context of binding

arbitration agreements. A proposed settlement is not at issue in this case, nor is an arbitration agreement. Plaintiffs argue that the cases relied upon by Defendants only involve waivers that are in conjunction with an arbitration provision. Plaintiffs further argue that in Defendants' case authorities, the waivers were determined valid because of the FAA and federal policy favoring arbitration, and because those cases had arbitration provisions. The case at hand does not have an arbitration provision, but the Fourth Circuit in *Adkins* makes clear that regardless of an arbitration provision, there is "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002). Further analysis of case law reveals that the FLSA § 216(b) "collective" action is a procedural right, rather than a substantive one, and can be waived. This Court is aware of the current trio of pending cases before the Supreme Court addressing whether class action waivers in employment arbitration agreements are valid.[3] However, this Court believes that the current case law before it provides sufficient guidance within this context to consider the following arguments by the parties. There is no arbitration provision here. There is only a waiver of collective/class action provision.

Plaintiffs principally rely on the holding in *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 590 (6th Cir. 2014), which provides that the right to participate in a collection action within the context of the FLSA cannot normally be waived. *Killion* relied upon the Sixth Circuit's

_____

[3]This Court notes that currently before the United States Supreme Court is the issue of whether an employee can be required to resolve employment disputes through individual arbitration, waiving the possibility of proceeding collectively. *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016). This case has been consolidated with *NLRB v. Murphy Oil USA, Inc.*, 808 F.3d 1013 (5th Cir. 2015) and *Ernst & Young LLP v. Morris*, 834 F.3d 975 (9th Cir. 2016) (consolidation referenced at 137 S. Ct. 809 (2017)). The NLRB argues that waiver provisions of class actions in employment arbitration agreements violate employees' rights under the National Labor Relations Act and are unenforceable. The question is whether the FAA trumps the NLRA.

previous holding in *Boaz v. FedEx Customer Info. Servs., Inc.*, where the court held that an employment agreement cannot deprive employees of their statutory rights under the FLSA, before invalidating a clause that limited the time to file a lawsuit under the FLSA. 725 F.3d 603, 606 (6th Cir. 2013). *Killion* noted that no court of appeals appeared to have squarely addressed this issue regarding the validity of a collective action waiver outside of the arbitration context at that time.

A few years later, in *Feamster v. Compucom Sys., Inc.*, No. 7:15-CV-00564, 2016 WL 722190 (W.D. Va. Feb. 19, 2016), a defendant moved to dismiss collective action claims because it argued the plaintiffs had already waived their right to bring collective action litigation within their employment agreements. *Id.* at *3. *Feamster* considered the plaintiffs' argument that the waivers are unenforceable as a matter law based upon the ruling in *Killion.* However, *Feamster* ultimately rejected the Sixth Circuit's analysis in favor of a line of cases holding the right to collective action is waivable, even when an employment agreement does not contain an arbitration clause, thereby declining to follow *Killion.* Instead, the court in *Feamster* relied heavily upon the holding in *Walthour v. Compucom Systems, Inc.*, 745 F.3d 1326 (11th Cir. 2014).

In *Walthour*, the Eleventh Circuit considered the validity of a collection action waiver in the context of an arbitration clause and found that the FLSA did not preclude the enforcement of the waiver. The Court first considered the language of Section 16(b) of the FLSA which provides that an employee may bring FLSA violations "for and in behalf of himself . . . and other employees similarly situated." *Walthour* explained, "the FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action under § 16(b)." 745 F.3d at

1334. The *Walthour* court noted that the circuits that have addressed this issue at that time concluded that the FLSA *does not provide for a non-waivable substantive right to bring a collective action*. *Id.* at 1336 (emphasis added). *Walthour* reasoned that even if Congress intended to create a "right" under the FLSA to bring a class action, if an employee has to affirmatively "opt-in" to a class action, surely that employee has the ability to waive participation, as well. *Id.* at 1335.[4] *Walthour* thus agreed with the analysis of the Eighth Circuit in *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1051-52 (8th Cir. 2013), which set forth the same reasoning in analyzing an FLSA claim.   Perhaps more persuasive is the fact that the Eleventh Circuit determined that Congress's decision to specifically allow for the *procedural* right to collective action in the FLSA does not thereby transform this right into a *substantive* one. *Id.* at 1336.[5] The Fourth Circuit has also determined that there is *no* suggestion that Congress intended to confer a non-waivable right to a class action under this statute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002).

In reviewing the applicable case law, this Court finds that based on the current case law, including cases within the Fourth Circuit, the FLSA does not provide a substantive right to bring a collective action based upon a certain class, despite the fact that it permits employees to bring

---

[4]Moreover, *Walthour* points out that the Supreme Court has previously considered this language in a case brought under the Age Discrimination in Employment Act, which expressly adopted the collective language action found in the FLSA. In *Amer. Exp. Co. v. Italian Colors Restaurant*, the Supreme Court interpreted a previous case in reaching the result that the Supreme Court had no qualms about enforcing class action waivers in the context of arbitration agreements even though the ADEA expressly permitted collective actions. 570 U.S. 228, 238 (2013).

[5] In fact, the Eleventh Circuit further makes clear that the decision to enact the collective action provision within the FLSA actually limits a litigant's procedural rights under Rule 23. Were it not for that provision within the FLSA, a litigant could bring a representative FLSA action without prior consent of similarly situated individuals. *Walthour*, 745 F.3d at 1336.

such actions. This Court acknowledges Plaintiffs' reliance on the reasoning set forth in *Boaz*, however the issue in that case was whether employees can waive their claims under the FLSA by signing an employment agreement that shortens the limitations period to bring a lawsuit. The *Boaz* court found that the very right of employees to bring claims for violation of their FLSA right to minimum wages, overtime, and liquidated damages was abridged by precluding these employees from bringing claims within the specified statutory period. *Boaz*, 725 F.3d 603, 606 (6th Cir. 2013). Plaintiffs' reliance on this case to assert that the right to bring a collective action is nonwaivable is contrary to the controlling case law in this circuit, as well as is distinguishable from this case in that Plaintiffs' ability to bring their individual FSLA claims is still left intact.

As to Plaintiffs' policy arguments regarding the waiver of class actions in suits brought under the FLSA, the Court does not find *Brooklyn Savings Bank v. O'Neil* to be persuasive. 324 U.S. 697 (1945). Plaintiff argues that *O'Neil* supports the idea that the clear congressional intent of Congress was to preclude waivers of collective action rights under the FLSA. This Court agrees with Plaintiff that *O'Neil* undoubtedly discusses the importance of the FLSA, particularly as it relates to wage earners. However *O'Neil* specifically considered whether a wage earner can waive his or her right to recover liquidated damages under the Section 16(b). There, the Court explained that the statutory language, legislative reports and debates do not reveal that the issue had been specifically considered but ultimately decided to prohibit these kinds of waivers after explaining how it is similar to the prohibition on allowing a waiver of basic minimum and overtime wages. 324 U.S. 697, 707. In other words, a prohibition on liquidated damages was linked to the minimum wage expressly listed in the statute. By contrast, the waiver in question

13

in this case focuses on the method by which a lawsuit may be brought, but it does not otherwise prohibit a claimant from bringing individual claims. Therefore, this Court finds that based upon the applicable contract language, a plaintiff may be able to waive the ability to bring their FLSA claims as collective class actions, if provided for in the agreement and not otherwise precluded by another applicable law. In this case, the agreement provides for a waiver of collective and class actions; therefore, unless precluded by another law, summary judgment should be granted to Defendants as to Plaintiffs' collective action claims brought under the FLSA.[6]

### C. Rule 23 Class Action Waivers

Defendants also seek summary judgment as to Plaintiffs' Rule 23 "class action" claims. [ECF #35-1, p. 1]. In response, Plaintiffs have not provided a response as to the invalidity of the waiver as it relates to class actions brought under Rule 23. Federal Rule of Civil Procedure 23(a) states that, "one or more members of a class may sue or be sued as representative parties" provided certain requirements are met. Plaintiffs have not indicated any reason for this Court not to find that, much like the applicability of the waiver as to the FLSA collective action, the waiver applies to its Rule 23 cause of action, as well. Plaintiffs do not make an argument regarding the validity of the Rule 23 class waiver. They do not argue it violates any South Carolina law, or is otherwise unconscionable under South Carolina law. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims."). Clearly, the right to employ Rule 23 is a

---

[6] Here, Plaintiffs argue that the National Labor Relations Act prevents these kinds of waivers. Accordingly, this Court considers Plaintiffs' argument with respect to the National Labor Relations Act.

procedural right only. As such, it can be waived.

### D. Waivers and the National Labor Relations Act

Plaintiffs argue that the contractual provision with Convergys' contract requiring its employees to waive their right to participate in collective or class action violates the National Labor Relations Act (the "NLRA"). Specifically, Plaintiffs focus on Section 7 of the NLRA which protects the rights of employees to engage in concerted legal action. Defendants respond that the NLRA does not apply because it only protects the right of current, rather than former employees.

This Court also looks again to the analysis in *Feamster*, which considered the argument that the waivers are unenforceable as a matter law based upon the ruling in *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 590 (6th Cir. 2014). This Court finds the analysis in *Feamster* persuasive, particularly in light of the fact that *Killion* has been called into doubt by *Convergys Corp. v. NLRB*, 866 F.3d 635 (5th Cir. 2017). In *Convergys*, the Fifth Circuit Court of Appeals was considering an appeal of a determination by the National Labor Relations Board that *Convergys* violated the National Labor Relations Act ("NLRA") by requiring job applicants to sign a class and collective action waiver and by seeking to enforce this waiver. Thereafter, an employee brought a class action lawsuit, but it was withdrawn after the parties settled the matter. *Id.* at 636. Nonetheless, the Board's General Counsel issued a complaint alleging Convergys had violated Section 8(a)(1) of the NLRA by requiring job applicants to sign this waiver. *Id.* The Fifth Circuit first stated that the use of class action procedures is not a substantive right. *See generally D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 357 (5th Cir. 2013); *Deposit Guaranty Nat.*

*Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only"). The Fifth Circuit further pointed to several cases that have held there was not substantive right to proceed collectively under the FLSA. *D.R. Horton*, 737 F.3d 344 at 357-358. Within the opinion, the Fifth Circuit also makes clear that it has previously rejected the opinion that Section 7 of the NLRA (describing "concerted activities") guarantees a right to participate in class and collective actions. *Id.* at 637. In fact the Fifth Circuit stated that it has previously held that the phrase "other concerted activities" does not contemplate participation in class and collective actions. *Id.* at 640 (discussing the holding in *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013)). Accordingly, the Fifth Circuit determined that Section 7 of the NLRA does not include the right to participate in class and collective actions. Therefore, waivers, like the ones present in this case, do not constitute engaging in unfair labor practices for the purposes of the Board. *Id.* at 640. Other circuits disagree with this analysis. In *NLRB v. Alternative Entertainment, Inc.*, 858 F.3d 393, 403 (6th Cir. 2017), that court found that whether Rule 23 provides a substantive right is irrelevant because the right to concerted activity under the NLRA is a "core substantive right."

In reviewing the case law, this Court finds persuasive the fact that a very similar waiver was upheld in a district court case wherein the Middle District of Georgia determined that class action waivers are going to be upheld because they are contractual provisions which do not affect any substantive rights. *Palmer v. Convergys Corp.*, No. 7:10-cv-145, 2012 WL 425256, at *2 (M.D. Ga. Feb. 9, 2012). While this Court notes the apparent contrary language in *Killion*, the holding in the recent *Convergys* action as it relates to the NLRA, as well as the analysis in

16

*Feamster*, provides good support for this Court to determine that these waivers do not implicate substantive rights, do not violate the NLRA, and therefore the contractual provisions agreed upon by the parties should be enforced.

*Convergys v. NLRB*, 866 F.3d 635 (5th Cir. 2017) is also instructive as to a further point made by Plaintiffs. Plaintiffs argue that Defendants willfully and intentionally violated the National Labor Relations' Board Order regarding the decision in question was based upon a district court case in the Eastern District of Missouri. In *Convergys v. Grant*, the district court determined that it was a violation of Section 7 and Section 8(a)(1) of the NLRA to have employees sign class/collective action waivers that are not part of an arbitration agreement. However as subsequently pointed out by Defendants, on August 7, 2017, the Fifth Circuit granted a request for review of this decision and denied the Board's request to enforce the order. In *Convergys v. NLRB*, the Court of Appeals for the Fifth Circuit held that Section 7 of the NLRA does not include a right to participate in collective actions, and abrogation of this right does not constitute an unfair labor practice under Section 8(a)(1).[7] This Fifth Circuit decision therefore calls into question the action referenced by Plaintiffs, *Convergys Corp. and Hope Grant*, 363 NLRB No. 51 (2015), also filed by the same individual in front of the administrative law judge based on the same waiver language. Accordingly, this Court finds that there is no longer a basis upon which to find that Defendant has willfully and intentionally violated the cease and desist order by the National Labor Relations Board.

---

[7] Defendants filed a Notice of Supplemental Authority explaining that the Fifth Circuit granted Convergys' petition for review and denied the NLRB cross-application to enforce the order in *Convergys Corp. & Hope Grant*, 363 NLRB No. 51 (Nov. 30, 2015). [ECF #40].

## II. Motion to Conditionally Certify Class

Plaintiffs have also filed a Motion for Conditional Class Certification with respect to their FLSA claims. [ECF #10]. Although this Court believes the waiver is valid as to a collective or class action, regardless of that, and alternatively, the Court finds it inappropriate to conditionally certify a class due to an insufficient showing of "similarly situated" employees. This Court denies conditional class certification under the FLSA. Plaintiffs seek to conditionally certify the following class: "[a]ll current and formerly hourly at-home customer service representatives that have worked for Defendants at any time from September 1, 2015 through the date of judgment on this matter." [ECF #10, p. 1]. Plaintiffs state that these individuals were all subject to a similar policy or scheme which created widespread FLSA violations, namely to receive proper compensation. As previously discussed in this Order, this Court is granting Defendants' Motion for Summary Judgment as to the ability to bring its collective active claims. However, even if the waivers were found to be unenforceable, this Court agrees with Defendants that Plaintiffs have not made a proper showing to certify this collective action.

Section 216(b) of the FLSA sets forth the standard for class certification and provides: "[a]n action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Several district courts employ a two-step process in analyzing the certification of a collective action under the FLSA. At the first step, the court generally considers "whether other similarly situated employees should be notified." *Curtis v. Time Warner Enter.-Advance Newhouse Partnership*, No. 3:12-CV-2370-JFA, 2013 WL

1874848, at *2 (D.S.C. May 3, 2013). The second step is triggered by an employer's motion for decertification and typically occurs after substantial discovery has taken place. *Id.*

Under step one, Court's often require a plaintiff show a "reasonable basis" for his or her claim that there are other similarly situated employees. *Curtis,* 2013 WL 1874848, at *2 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258-62 (11th Cir. 2008)). Alternatively, courts have required plaintiffs to "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Curtis,* 2013 WL 1874848, at *2 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)). Other courts have described this requirement as demonstrating "some identifiable factual nexus which binds the named plaintiffs and the potential class members together." *MacGregor v. Farmers Ins. Exchange*, No. 2:10-CV-03088, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011) (citing *Heagney v. Eur. Am. Bank*, 122 F.R.D. 125, 127 (4th Cir. 1988)). Under this step, the plaintiff's burden has been described as "fairly lenient" because the court is trying to determine whether "similarly situated" plaintiffs exist. *Id.* Still, the plaintiff bears the burden of demonstrating that notice is appropriate. *MacGregor*, 2011 WL 2981466, at *2 (citing *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)). Mere allegations will not suffice to make a proper showing; instead, some factual evidence is necessary. *MacGregor*, 2011 WL 2981466, at *2 (citing *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002)).

Further, the court's discretion to facilitate notice in these cases is not without bounds. *MacGregor*, 2011 WL 2981466, at *2. Courts should not exercise this discretion unless the plaintiff has shown that the facts and circumstances of the case present a class of "similarly

situated" aggrieved employees. *Id.* (citing *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547-48 (E.D. Va. 2009). If the Court determines that individualized determinations are more likely to predominate, a collective action would hinder, rather than promote, efficient case management. *MacGregor*, 2011 WL 2981466, at *2. In such a case, notice should not be granted. *Id.* (citing *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686-87 (D. Md. 2010); *see also England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (finding conditional certification inappropriate where adjudication would have required factual inquiries into employment relationships involving different managers at different locations)).

If a court were to grant a motion for conditional certification, the defendant may file a motion for decertification, at which time a more stringent standard under the second step must be met. *Id.* at *3. The second step usually occurs near the end of discovery, and the courts have considered a number of factors, including (1) disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.* The term "similarly situated" is not defined in the statute; however, courts have determined if potential class members are similarly situated based on the existence of "issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467-68 (E.D. Va. 2014) (quoting *Houston et al. v. URS Corp. et al.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008)). Courts determine whether conditional certification of a collective action is warranted by examining the parties'

pleadings and affidavits. *Gordon v. TBC Retail Group, Inc.*, 134 F. Supp. 3d 1027 (D.S.C. Sept. 30, 2015).

Here, Plaintiffs argue that Defendants employed a common policy or practice in failing to properly pay employees by requiring them to follow a standard daily checklist while conducting business at their homes. [ECF #10-1, pp. 10-16]. This checklist provides thirteen login steps for the employee. [ECF #10, p. 10]. For example, Plaintiffs argue that employees must reboot a router, which Plaintiffs state takes "an appreciable amount of time" and that the checklist duties resulted in employees performing "a substantial amount of compensable work off the clock." [ECF #10, p. 11]. However, Plaintiffs do not suggest that the time was substantially the same for each employee or what factors that difference in time would hinge upon. Plaintiffs simply provide a range of time for each checklist activity. Plaintiffs argue that the declaration of the employees who have already "stepped forward" and joined the lawsuit establish Defendants' uniform and company-wide pay practices. The two declarations provided are from Cynthia Fuerte, who is no longer a member of this lawsuit, and Plaintiff Terry Dimery. These two declarations mirror the same estimated time frame that Plaintiffs provided in their brief, but do not otherwise provide any other alleged common scheme. In their reply brief, Plaintiffs filed a declaration of a former employee who filed a declaration in another case approximately three years before this action was filed in this Court, and prior to the time frame covered by the putative collection action.

Defendants initially argue that the fact that there is an individualized inquiry into whether individual employees signed collective and class action waivers suggests that certification is not appropriate. [ECF #36, p. 22]. Defendants also argue that Plaintiffs have provided inadmissible

evidence to support their motion in that the delcarations are essentially indistinguishable and in fact, include the same mistakes in them. [ECF #36, pp. 12-13]. Defendants further respond and argue that Plaintiffs have not met the "similarly situated" burden or otherwise show that the putative class members are victims of the same unlawful policy or practice. In doing so, Defendants provide a variety of differences that exist about the employed home-based customer service representatives. For example, Defendants argue that with respect to whether employees were compensated for work allegedly performed "off the clock" would include individualized inquiry into the project being worked on, the type of position held, access to tools and applications, whether the employees experienced technical issues, what types of habits they performed during their shifts, particularly at the beginning and end, and whether they used their computer for personal reasons during the day. [ECF #36, p. 23]. Defendants provide their own declarations to support their list of factual differences from other employees who refute that they were subject to an unlawful policy described by Plaintiffs. [ECF #36, p. 15]; [ECF #36-2]. Defendants also point out that in other Convergys cases that have granted a motion to conditionally certify a collective action, the class members were all "brick and mortar" agents. [ECF #36, p. 18].

This Court is mindful of the order provided in the *Cosby v. Convergys* case where another court certified a class, though it ultimately resolved as a Rule 23 class. [ECF #10-11, p. 3]. The order is relatively brief and does not provide a sufficient basis upon which this Court can determine the facts in that case. In any event, this Court agrees, given the nature of the fact that these employees were all at-home technicians remotely logging in, that the individualized inquiry

of their claims predominates.  In order to consider whether each putative class member was paid appropriately, an individualized inquiry of each employee's claims is necessarily implicated. Even were this Court to agree that Plaintiff has established a common scheme or policy that violates the law, in order to resolve each claim, an individualized determination would be necessary. *Blaney v. Charlotte-Mecklenburg Hosp. Authority*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *10 (W.D.N.C. Sept. 16, 2011). This Court does not find that the declarations provided by Plaintiffs, when considered with the arguments and evidence presented by Defendants, meet the lenient standard for certification in this case.  Plaintiffs have not satisfied the requirement that they show Plaintiffs are "similarly situated." Accordingly, this Court denies Plaintiffs' motion to conditionally certify the suggested proposed collective FLSA class.

As to a Rule 23 class, Plaintiffs have not sought to certify a group of class members under Rule 23. In order to do so, Plaintiffs would have to meet the requirements of numerosity, common question of law or fact, and typicality. Fed. R. Civ. P. 23. This Court notes that currently there are two Plaintiff involved in this lawsuit, and this Court has previously determined that Plaintiffs have not established that the parties have similar claims. However, this Court does not need to consider whether such a certification would be appropriate in this circumstance, especially in light of the fact that this Court finds Plaintiffs have waived their right to bring a Rule 23 class action.

**III. Motion to Strike Consent to Join**

On June 17, 2017, This Court entered its Conference and Scheduling Order providing the parties until September 5, 2017 to amend their pleadings. Approximately a month after this deadline, on October 10, 2017, Plaintiffs filed a Notice of Joinder seeking to include Lashea

Moore in this lawsuit. Three days later, Defendants filed a Motion to Strike the Consent to Join Lashea Moore as untimely under Rule 16 of the Federal Rules of Civil Procedure. In response, Plaintiffs argue that Ms. Moore contacted them on October 9, 2017 to join this action. Plaintiffs argue that it is necessary to add Ms. Moore because she was employed from December 8, 2015 until November 21, 2016, and her statute of limitations begins to run in approximately two months from their response date. Moreover, Plaintiffs argue that the FLSA is remedial in nature and requires Ms. Moore to file a consent, thus she should not be punished for doing what the law requires. Plaintiffs argue that opting in to a class action under Section 216(b) of the FLSA is distinguishable from Rule 20 joinder cases. Finally, Plaintiffs argue good cause exists to permit Ms. Moore to file this consent because Ms. Moore's claim bolster and support the other claims, and without allowing her to join this lawsuit, she would have to file a completely separate lawsuit or will not be able to vindicate her rights. [ECF #43, p. 10]. Defendants filed a reply, arguing that Plaintiffs did not make the proper showing for good cause under Rule 16, and further that contrary to Plaintiffs' assertions, the statute of limitations is not at risk of expiring because, according to an declaration filed by Pam Castillo, Ms. Moore was not hired by Defendants until July 11, 2016. [ECF #44-1, p. 2].

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides: "[a] schedule may be modified only for good cause and with the judge's consent." Good cause means that scheduling deadlines cannot be met, despite a party's diligent efforts. *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. March 25, 1997), aff'd 129 F.3d 116 (4th Cir. 1997). This Court is mindful of the fact that circumstances within each case sometimes necessitate for leeway

within scheduling order deadlines. However, Plaintiffs have not demonstrated diligence in complying with the scheduling order deadline, and this Court is satisfied as to the veracity of Ms. Castillo's representations regarding Ms. Moore's employment dates and the subsequent bearing that has upon any statute of limitations. Moreover, this Court has previously determined in this Order that the motion to certify the class should be denied. Thus, this Court does not believe judicial economy will be served by allowing Ms. Moore to file a consent to join this lawsuit. Accordingly, the Motion to Strike Ms. Moore's Consent to Join is granted.

### Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits filed in this case. For the reasons stated above, this Court grants Defendants' Motion for Summary Judgment to the extent Plaintiffs' seek to pursue their claims in a representative capacity as collective and/or class action claims, and those claims are dismissed with prejudice. [ECF #35]. However, Plaintiffs' individual FLSA violations and breach of contract claims remain before this Court as independent claims by the two individual Plaintiffs involved in this lawsuit (Terry Dimery and Charlotte Jones). Plaintiffs' Motion for Conditional Class Certification and Notice is **DENIED**. [ECF #10]. Defendants' Motion to Strike Consent to Join by Lashea Moore is **GRANTED**. [ECF #42].


**IT IS SO ORDERED.**

Florence, South Carolina                    s/ R. Bryan Harwell
March 26, 2018                              R. Bryan Harwell
                                           United States District Judge

25